[No. D036326. Fourth Dist., Div. One. Mar. 27, 2002.]

STEVE CARVER et al., Plaintiffs and Appellants, v. CHEVRON U.S.A., INC., et al., Defendants and Respondents.

**COUNSEL**

Mundell, Odlum & Haws, Karl N. Haws and Bronwyn W. Petersen for Plaintiffs and Appellants.

Greenan, Peffer, Sallander & Lally, Kevin D. Lally; Astrachan, Gunst, Goldman & Thomas and Peter H. Gunst for Service Station Dealers of America and Associated Trades as Amicus Curiae on behalf of Plaintiffs and Appellants.

Pillsbury Winthrop, Robert M. Westberg, Douglas R. Tribble and David M. Logan for Defendants and Respondents.

## OPINION

**HUFFMAN, Acting P. J.**—This is an appeal from a postjudgment order of the superior court granting a prevailing defendant's motion for contractual and statutory attorney fees, expert fees and costs in the total amount of $6,878,686.94. Plaintiff individuals Steve Carver and 22 other Chevron dealers (Dealers) filed this action against Chevron U.S.A., Inc. (Chevron) and several of its management employees[1] for damages for breach of contract (lease provisions), fraud and alleged violations of California's antitrust laws (Bus. & Prof. Code,[2] § 16720, hereinafter the Cartwright Act). Dealers won a jury verdict awarding damages on some of their theories, but the judgment was reversed on appeal by this court with directions to enter judgment in favor of Chevron. (*Carver v. Chevron U.S.A., Inc.* (May 28, 1999, D025937) [nonpub. opn.] (our prior opinion).) On remand, Chevron obtained an award of attorney fees and costs against Dealers under the lease's attorney fees clause, in conjunction with section 16750, the attorney fees provision of the Cartwright Act, and Code of Civil Procedure section 998, allowing an award of expert fees and costs. Chevron was deemed the prevailing party in the action as a whole. (Code Civ. Proc., § 1032.)

On appeal of the order granting Chevron's motion for contractual and statutory attorney fees and costs, Dealers assert the trial court incorrectly found as a matter of law that all the relevant statutory criteria for such an award had been met in this action, with respect to the competing policies found in the Cartwright Act, in Civil Code section 1717 pertaining to awards of contractual attorney fees, and in certain portions of the Code of Civil Procedure that provide for awards of attorney fees or litigation costs. (Code Civ. Proc., §§ 1021, 1032, 1033.5, subd. (a).) Dealers generally argue the trial court misinterpreted the language of the lease attorney fees clause pertaining to a party who substantially prevailed upon different aspects of the action. The particular challenges Dealers make to the award are that it should have excluded fees and costs incurred in defense of (1) the Cartwright Act claims, as not authorized by contract; (2) the individual defendants, who were not parties to the lease; and (3) a negligence cause of action that was voluntarily dismissed before trial (Civ. Code, § 1717, subd. (b)(2)).

---

[1] The three individual defendants, Jordan G. Traeger, Larry J. Denning and Nick R. Vigil, were named in the causes of action for intentional misrepresentation, negligent misrepresentation, concealment, negligence and unfair trade practices. (Bus. & Prof. Code, § 17000 et seq.) They are sometimes collectively referred to here, along with their employer, as Chevron. In other instances, we refer to Chevron separately as the Corporation.

[2] All statutory references are to this code unless otherwise stated.

Dealers additionally claim that the trial court erred or abused its discretion in awarding Chevron and the individual defendants expert witness fees and related costs under Code of Civil Procedure section 998, which requires an award of costs where a party fails to obtain a more favorable judgment than would have been obtained by acceptance of a pretrial settlement offer. They argue the offer made ($100 per dealer plus a waiver of attorney fees and costs) was unreasonable in its terms.

Having studied the record and the applicable statutory provisions, we conclude that with respect to the portion of the attorney fees award that is not based on the contract or tort theories arising out of or related to the lease agreement, but rather represents the defense of the Cartwright Act claims, the trial court's decision does not adequately account for all of the competing policies that have been developed in this area, and erroneously attempts to award attorney fees under a reciprocal rights theory under the Cartwright Act. However, the attorney fees and costs award is well supported on the contract and related tort theories arising out of the lease agreement, as to the defense of both Chevron and the individual defendants, and under Code of Civil Procedure section 998. Accordingly, we reverse the postjudgment order with directions to the trial court to make appropriate findings and apportionment to delete only that part of the award that represents the attorney fees portion of the defense of the Cartwright Act claims.

FACTUAL AND PROCEDURAL BACKGROUND

A

*Underlying Trial and Judgment on Appeal*

As set forth in our prior opinion, Chevron, a refiner (manufacturer) and retailer of petroleum products, sells Chevron brand gasoline through service stations, some of which it owns and operates and some of which it leases to franchisees, such as Dealers, through written leases and supply contracts. In 1984, Chevron introduced a variable rent program, which became mandatory for all lease renewals executed after January 1985. Extensive disputes developed between Chevron and Dealers, leading to the filing of this action. The operative pleading, Dealers' third amended complaint, alleged 18 causes of action arising from Chevron's variable rent program, including intentional misrepresentation, negligent misrepresentation, concealment, breach of contract, breach of implied covenant of good faith and fair dealing, and unlawful horizontal and vertical restraints of trade. Dealers' causes of action for breach of contract and breach of implied covenant of good faith and fair dealing were alleged against the Corporation alone, excluding the individual

defendants. (The complaint also names a third individual defendant who was not found liable at trial.) The individual defendants, Chevron's management employees, were named in the causes of action for intentional misrepresentation, negligent misrepresentation, concealment, negligence, and unfair trade practices. (Bus. & Prof. Code, § 17000 et seq.)

Many of Dealers' causes of action were disposed of in Chevron's favor in pretrial motion proceedings. Chevron made a settlement offer under Code of Civil Procedure section 998 of $100 per Dealer, plus a waiver of attorney fees and costs, but it was not accepted by Dealers.

At trial, the jury returned verdicts against Chevron on the causes of action for intentional misrepresentation, negligent misrepresentation, and concealment.[3] However, Chevron prevailed at trial on the claims for breach of contract, breach of implied covenant of good faith and fair dealing, and unlawful vertical restraint of trade. Chevron appealed the judgment against it. Dealers also appealed the judgment against them on their first and second causes of action under the Cartwright Act.

On appeal, our prior opinion reversed the judgment against Chevron on the intentional misrepresentation, negligent misrepresentation, and concealment causes of action, as well as reversing the underlying order denying Chevron judgment notwithstanding the verdict. Accordingly, we directed the trial court to enter judgment in favor of Chevron on those causes of action. In addition, the judgment in favor of Chevron on the causes of action for unlawful horizontal and vertical restraints of trade was affirmed (Cartwright Act). Chevron was awarded costs on appeal. On remand, judgment was entered in favor of Chevron on the case as a whole.

B

*Proceedings on Motion for Attorney Fees and Costs*

Following the reversal on appeal of the judgment in favor of Dealers on some issues, Chevron filed its motion for an award of attorney fees and costs, based on the attorney fees clause found in the leases, its status as prevailing party, and also on the Code of Civil Procedure section 998 offer that was not accepted by Dealers. It provided a memorandum of costs and attorney declarations regarding fees and costs incurred. The attorney fees

---

[3]The verdicts on intentional misrepresentation and concealment were against the corporation alone, while the verdict on negligent misrepresentation was against the corporation and two individual defendants, Traeger and Denning.

request alone was for a total amount of $5,159,785.45. Extensive opposition was filed, including a stipulation among the Dealers that if apportionment of the award were to be granted, it should be divided by the number of dealers, rather than the number of stations. Reply papers and declarations followed, as did several continuances to complete the extensive paperwork.

The attorney fees provision found in the Dealer leases reads as follows: "23. In the event of any lawsuit between Company and Dealer (or any arbitration proceeding pursuant to section 22 hereof) arising out of or relating to the transactions or relationship contemplated by this Lease (regardless whether such action alleges breach of contract, tort, violation of a statute or any other cause of action), the substantially prevailing party shall be entitled to recover its reasonable costs of suit including its reasonable attorneys' fees. If a party substantially prevails on some aspects of such action but not others, the court (or arbitrator) may apportion any award of costs or attorneys' fees in such manner as it deems equitable."

## C

### Trial Court Ruling

After hearing and a motion to tax costs, the trial court granted, in part, Chevron's motion for attorney fees and costs, citing "Code of Civil Procedure § 1717" (actually Civ. Code, § 1717). Chevron was awarded attorney fees in the amount of $4,643,380. Based on Chevron's Code of Civil Procedure section 998 offer of $100 per Dealer plus a waiver of attorney fees and costs, not accepted by Dealers, Chevron was also awarded expert witness fees in the amount of $1,966,586. Chevron was further awarded costs of suit (trial court level) in the amount of $252,341.84, and costs relating to the previous appeal of $16,379.07. Accordingly, Dealers were ordered to pay Chevron the total sum of $6,878,686.94.

The trial court's reasoning set forth in the order included the following key passages: First, the court found unpersuasive the Dealers' arguments that a reciprocal right to attorney fees should not be granted because of the unequal bargaining power of the parties, or because it might discourage pursuit of meritorious claims because of the economic consequences. The court found the contracts (leases) providing for an award of attorney fees and costs to the prevailing party were not unconscionable.

Next, the trial court ruled that the Chevron attorney fees clauses did not require Dealers to waive any rights under the Cartwright Act (Bus. & Prof. Code, § 16750, subd. (a)), or the federal Petroleum Marketing Practices Act,

15 United States Code section 2801 et seq. (PMPA): "Instead, the fee provisions make the recovery of the attorney's fees mutual." The court distinguished *Covenant Mutual Ins. Co. v. Young* (1986) 179 Cal.App.3d 318 [225 Cal.Rptr. 861] (*Covenant Mutual*), as relied upon by Dealers, because there, the appellate court held that the trial court was incorrectly attempting to override the Legislature's intention to provide for such one-sided recovery by statute. (*Id.* at pp. 325-326, citing Civ. Code, § 3318.) The appellate court in *Covenant Mutual* expressly stated that it was not dealing with contractual attorney fees provisions and distinguished its statutory analysis of Civil Code section 3318 from the provisions of Civil Code section 1717, which imposes reciprocity on unilateral contractual provisions. (*Covenant Mutual, supra,* 179 Cal.App.3d at p. 324.)

Next, the trial court found applicable the reasoning of the Supreme Court in *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985 [73 Cal.Rptr.2d 682, 953 P.2d 858] (*Murillo*). In that case, the plaintiff lost his suit under the Song-Beverly Consumer Warranty Act (Song-Beverly Act) (Civ. Code, § 1790 et seq., the lemon law). The prevailing defendants sought to recover their costs and expert witness fees under Code of Civil Procedure sections 1032, subdivision (b) and 998, subdivision (c). The Supreme Court rejected the plaintiff's argument that the more specific provisions of the Song-Beverly Act prohibited the prevailing defendants from obtaining such recovery, and therefore those defendants were allowed to recover their costs and expert witness fees. Thus, in *Murillo,* the Supreme Court explained: "Because the cost-shifting provisions of the Song-Beverly Act do not 'expressly' disable a prevailing defendant from recovering section 998 costs and fees in general, or expert witness fees in particular, we find nothing in the Act prohibiting the trial court's exercise of discretion to award expert witness fees to seller under the circumstances of this case." (*Murillo, supra,* 17 Cal.4th at p. 1000.)

The trial court went on to deny Dealers' request to limit the amount of recovery to attorney fees and costs on appeal (based on the Dealers' argument they had prevailed on three causes of action at the trial level), stating as its reasoning: "Whether plaintiffs had prevailed before a jury does not negate that Chevron is the prevailing party in this litigation. Not only was Chevron partially successful at trial, Chevron prevailed on appeal when the court reversed the judgment notwithstanding the verdict. As stated in the judgment entered on November 11, 1999, 'Plaintiffs shall take nothing by their complaint against defendants Chevron U.S.A., Inc., Jordan G. Tragaer, Larry J. Denning and Nick R. Vigil and the action against said defendants is dismissed. . . .' "

With reference to the amount of attorney fees sought, Chevron's request was reduced from the requested amount of $5,159,785.45 to $4,643,380,

with reasons stated: "The court finds that Chevron's attorneys' hourly rates are reasonable based on the specialized skill of the attorneys. Nonetheless, after reviewing the billing, the court finds that some charges could have been reduced had a paralegal performed the tasks and some charges were excessive based upon the totality of circumstances."

Finally, on Chevron's request for expert witness fees and costs under California Code of Civil Procedure section 998, the trial court found that Chevron had prevailed on every cause of action, and at the time of the offer, Chevron had already incurred $308,064.08 in costs and attorney fees of $1,113,810.40. The trial court further ruled: "Given the substantial risks of paying costs at the time of the offer, Chevron is correct that this is not just a nominal offer, based upon the reasoning set forth in *Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258 [74 Cal.Rptr.2d 607]. [¶] Nonetheless, the court exercises its discretion to limit the recoverable expert witness fees from the requested $2,382,596.77. The court initially notes that Chevron has attempted to recover expert witness fees made prior to the offer of January 12, 1994 in the amount of $58,620.45, and these are deemed stricken. The balance of these fees is also reduced because the amount of expert witness fees sought is shocking. Chevron shall recover its expert witness fees based upon the § 998 offer in the amount of $1,966,586.00."

In response to a separate motion by Dealers for apportionment of the award, the trial court exercised its discretion, based upon the particular facts of this case combined with Chevron's conflicting arguments about its defense efforts, to order the responsibility for paying the award to be apportioned among the 30 service stations involved, as owned by the 23 Dealers. The trial court issued a further order nunc pro tunc setting forth the apportioned amount each Dealer was to pay.

Dealers appealed the order.[4] We have received an amicus curiae brief from the Service Station Dealers of America and Associated Trades, a trade group, setting forth its support of Dealers' appeal, and citing to the PMPA, 15 United States Code section 2801 et seq., as influential authority in the attorney fees context, as will be further explained in part I.D., *post*. (15 U.S.C. § 2805(d); Cal. Rules of Court, rule 13(b).)

---

[4]Since the appeal was filed, several of the individual Dealers, including Jim and Arlene Emley and Bill Capatanos, have dismissed their portions of the appeal and remittiturs were issued accordingly. The opening brief states that five of the original plaintiffs are no longer involved in this appeal.

DISCUSSION

I

*Contractual Attorney Fees/Costs Provision and Award*

A

*Standard of Review*

On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law. (*Wilson v. Wal-Mart Stores, Inc.* (1999) 72 Cal.App.4th 382, 389 [85 Cal.Rptr.2d 4]; *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297 [255 Cal.Rptr. 704].)

Stated another way, to determine whether an award of attorney fees is warranted under a contractual attorney fees provision, the reviewing court will examine the applicable statutes and provisions of the contract. Where extrinsic evidence has not been offered to interpret the lease, and the facts are not in dispute, such review is conducted de novo. (*Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 705 [75 Cal.Rptr.2d 376].) Thus, it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1999) ¶¶ 8:94.2 to 8:94.2a, pp. 8-36 to 8-37.)

B

*Contentions*

To evaluate Dealers' challenges to the award, we are required to evaluate the attorney fees clause here in light of statutory standards for prevailing party attorney fees and costs entitlements, and with specific reference to the general policies promoted by Cartwright Act fees and costs awards. Dealers' main claims of error are that the fees and costs incurred in defense of the Cartwright Act claims cannot fall within the scope of the attorney fees clause of the lease, and are not authorized by contract or by statute. Further, they claim the trial court misread the provisions of the attorney fees clause of the

lease, insofar as it refers to a possible award to a party who "substantially prevails on some aspects of such action but not others," such that the court "may apportion any award of costs or attorneys' fees in such manner as it deems equitable."[5]

Dealers' subsidiary claims are that these statutes required the court to exclude fees and costs incurred in defense of a negligence cause of action that was voluntarily dismissed before trial (Civ. Code, § 1717, subd. (b)(2)), and that apportionment was required as to fees incurred in defense of the individual defendants, who were not parties to the lease.

## C

### *Statutory Framework*

Basic litigation costs rules are outlined in *Santisas v. Goodin* (1998) 17 Cal.4th 599, 606 [71 Cal.Rptr.2d 830, 951 P.2d 399]: "Whether a party to litigation is entitled to recover costs is governed by Code of Civil Procedure section 1032, which provides, in subdivision (b), that '[e]xcept as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding.' For the purpose of determining entitlement to recover costs, Code of Civil Procedure section 1032 defines 'prevailing party' as including, among others, 'a defendant in whose favor a dismissal is entered.' (Code Civ. Proc., § 1032, subd. (a)(4).)" Also, a defendant against whom the plaintiff does not recover any relief is a prevailing defendant. (*Santisas v. Goodin, supra,* 17 Cal.4th at p. 606.)

Under Code of Civil Procedure section 1033.5, subdivision (a)(10), attorney fees are allowable as costs under Code of Civil Procedure section 1032, "when authorized by any of the following: [¶] (A) Contract. [¶] (B) Statute. [¶] (C) Law."[6] As pointed out by the Supreme Court in *Santisas v. Goodin,* "Code of Civil Procedure section 1021 does not independently authorize recovery of attorney fees. Rather, consistent with subdivision (a)(10) of Code of Civil Procedure section 1033.5, Code of Civil Procedure section 1021 recognizes that attorney fees incurred in prosecuting or defending an action may be recovered as costs only when they are otherwise authorized by

---

[5]Although the third amended complaint included causes of action for unfair trade practices (§ 17000 et seq.), these were disposed of by summary adjudication in favor of Chevron. On appeal, Dealers do not contend there was error in failing to apportion attorney fees according to the defense provided on these alternative statutory theories.

[6]Code of Civil Procedure section 1021 provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided."

statute or by the parties' agreement." (*Santisas v. Goodin, supra,* 17 Cal.4th at p. 607, fn. 4.)

In our case, there is a contractual attorney fees clause, bringing Civil Code section 1717 into play: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

However, Civil Code section 1717, subdivision (b)(2) specifies: "Where an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section."

This appeal requires us to read the above rules in conjunction with the attorney fees clause of the Cartwright Act, section 16750: "(a) *Any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter,* may sue therefor in any court having jurisdiction in the county where the defendant resides or is found . . . without respect to the amount in controversy, and to recover three times the damages sustained by him or her, interest on his or her actual damages pursuant to Section 16761, and preliminary or permanent injunctive relief . . . , *and shall be awarded a reasonable attorneys' fee together with the costs of the suit.*" (Italics added.)

It will be noted that this attorney fees clause of the Cartwright Act, section 16750, subdivision (a), is a unilateral fees clause, referring to an award to a prevailing party who is "any person *who is injured* in his or her business or property by reason of anything forbidden or declared unlawful by this chapter." (Italics added.) The section's plain language does not create any reciprocal right on the part of a prevailing defendant to such an award of "a reasonable attorneys' fee together with the costs of the suit," as incurred *in defense* of an action. (*Ibid.,* italics added.)

D

*Analysis*

1. *Cartwright Act Claims*

We are required as a threshold matter to determine if the normal reciprocal effect of Civil Code section 1717 on the contractual attorney fees clause

here will effectively create such a reciprocal effect on the statutory fees provision of the Cartwright Act, section 16750, subdivision (a). Here, the trial court granted, in part, Chevron's motion for attorney fees and costs, citing "Code of Civil Procedure § 1717" (actually Civ. Code, § 1717). This miscite, obviously referring to the Civil Code, has no effect on the reasoning or validity of the trial court's decision. We focus on the substance thereof.

Dealers begin by arguing that in place of Civil Code section 1717, the trial court's analysis should have focused on Code of Civil Procedure section 1021, and that such an analysis should have led to denying any award of fees attributable to noncontract claims, either statutory or tort, in view of the specific language of this clause. They rely upon the introductory language in Code of Civil Procedure section 1021, that: *"Except as attorney's fees are specifically provided for by statute,* the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided." Their argument is that the Cartwright Act is another such specific provision by statute that removes attorney fees obligations from the scope of Code of Civil Procedure section 1021. (§ 16750, subd. (a).)

Similarly, Dealers rely upon the introductory language in Code of Civil Procedure section 1032, subdivision (b), to the same effect, providing *"[e]xcept as otherwise expressly provided by statute,* a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." Under Code of Civil Procedure section 1033.5, subdivision (a)(10), attorney fees are allowable as costs under Code of Civil Procedure section 1032, "when authorized by any of the following: [¶] (A) Contract. [¶] (B) Statute. [¶] (C) Law." However, the question is whether section 16750, subdivision (a) of the Cartwright Act otherwise indicates, such that attorney fees incurred to defend against such claims are not subject to a reciprocal contractual attorney fees clause, or other reciprocal effect as created by law.

Here, the trial court ruled that Chevron lease attorney fees clauses did not require Dealers to waive any rights under the Cartwright Act (§ 16750, subd. (a)), stating: "Instead, the fee provisions make the recovery of the attorney's fees mutual." The court distinguished *Covenant Mutual, supra,* 179 Cal.App.3d 318, as relied upon by Dealers, because there the court held that the trial court was erroneously attempting to override the Legislature's intention to provide such one-sided recovery by statute. (*Id.* at pp. 325-326.) Also, the trial court noted that in *Covenant Mutual,* the analysis did not

address contractual attorney fees provisions, such as under Civil Code section 1717. (*Covenant Mutual, supra,* 179 Cal.App.3d at p. 324.)

■ In *Murillo, supra,* 17 Cal.4th 985, the Supreme Court dealt with a potential conflict between Code of Civil Procedure section 1032, subdivision (b), giving a prevailing party a right to recover costs, and a separate costs provision in the Song-Beverly Act. (Civ. Code, § 1790 et seq.) (*Murillo, supra,* 17 Cal.4th at p. 999.) The attorney fees provision of the Song-Beverly Act (Civ. Code, § 1794, subd. (d)), states: "If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." As noted by the Supreme Court, the Song-Beverly Act "has no comparable provision for prevailing sellers, and it is this asymmetry that gives rise to the legal dispute in this case. Buyer contends that, because the Act specifically provides for the recovery of costs only by a prevailing buyer, a seller is prohibited from recovering costs even if it prevails in a lawsuit under the Act. In contrast, seller contends nothing in the Act expressly disables section 1032 from applying to a prevailing seller." (*Murillo, supra,* 17 Cal.4th at p. 990, italics omitted.) The court decided for the seller: "We note that when the Legislature intends to restrict the recovery of costs to just one side of a lawsuit, it knows how to express such restriction. [Citation.] We conclude buyer's argument we should interpret Civil Code section 1794(d)—despite its lack of an express exception to section 1032(b)—as an exclusive, one-way cost-shifting provision so as to avoid implicating the validity of dozens of other statutes, is meritless. [¶] Having found buyer's cited authority distinguishable and no express exception in Civil Code section 1794(d) to the general rule set forth in section 1032(b) permitting a prevailing defendant to recover its costs, we conclude the Court of Appeal below ruled correctly that sellers were entitled to their costs." (*Murillo, supra,* 17 Cal.4th at p. 999.)

In *Murillo, supra,* 17 Cal.4th at page 999, the Supreme Court was careful to state that its opinion did not address the issue of authorization for the recovery of attorney fees, only litigation costs, in view of the existence of many cost-shifting statutes cited.[7] The court said, "Sellers are not seeking attorney fees, and there is no 'default' attorney fee recovery provision akin

---

[7]In *Murillo*, the buyer argued, " 'California law features a plethora of statutes which contain awards of costs and/or attorney's fees only to one particular party, often the plaintiff bringing an action for violation of California law,' " and cited 35 different statutes of this type. (*Murillo, supra,* 17 Cal.4th at p. 998.)

to section 1032(b). Indeed, the law is to the contrary. (See § 1021 ['Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . .'].)" (*Murillo, supra,* 17 Cal.4th at p. 999.) Thus, we believe that the Supreme Court's conclusions that there was no express exception in the Song-Beverly Act (Civ. Code, § 1794, subd. (d)) to the general rule set forth in Code of Civil Procedure section 1032, subdivision (b) (permitting a prevailing defendant to recover its costs), and that the sellers were therefore entitled to costs of suit when they prevailed, should not be extended beyond its applicability to costs of suit, into the contractual attorney fees area. (*Murillo, supra,* 17 Cal.4th at p. 999.)

Accordingly, we should not assume, based on any of the authority presented, that the attorney fees provision in favor of a prevailing plaintiff under the Cartwright Act may be read reciprocally in favor of a prevailing defendant, for other than standard costs of suit. (Code Civ. Proc., § 1032, subd. (b).) Since there is a contractual attorney fees clause here giving rise to the claimed attorney fee entitlement, *Murillo* does not govern this situation. Rather, we believe the Cartwright Act fees provision is the kind of "other statutory provision" that will override a general litigation costs entitlement under Code of Civil Procedure section 1032, for purposes of assessing attorney fees as costs under Code of Civil Procedure section 1033.5, subdivision (a)(10). (§ 16750.)

Similarly, the attorney fees entitlement authorized by Code of Civil Procedure section 1021 also refers to a limitation on the right of parties to agree to fees entitlements, by stating: *"Except as attorney's fees are specifically provided for by statute,* the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided." We accordingly conclude that the attorney fees clause in the lease agreements cannot be construed to cover Chevron's costs of defending against the Cartwright Act claims, and the trial court was required by statute to make an apportionment of those defense costs and to delete them from the amount of attorney fees claimed under the parties' agreement. It was error not to do so, and we are required to reverse the order to this extent and return the matter to the trial court for these further proceedings.

We are supported in this conclusion by the analysis in *Covenant Mutual, supra,* 179 Cal.App.3d 318 (holding Civ. Code, § 3318 does not expressly or impliedly authorize attorney fees for agents successful in defending a breach

of warranty of authority suit). There the court did not have any contractual fee agreement before it. However, it was required to discuss the general concept of reciprocal fees provisions in the statutory context, and made these policy comparisons: "[There is] a salient difference between 'one-sided' attorney fee provisions which individuals or institutions insert in private contracts and those which lawmakers enact in public legislation. The former are created by private parties for their own private advantage and almost always favor the party with the greater bargaining power. The latter, on the other hand, are created by legislators as a deliberate stratagem for advancing some public purpose, usually by encouraging more effective enforcement of some important public policy. Through enactment of section 1717 the Legislature has evidenced it regards private imposition of unilateral fee-shifting to be against the public interest. At the same time, in literally scores of specific areas of the law it has intentionally imposed one-sided fee-shifting as a means of advancing the public interest. [¶] The fact lawmakers offer a bounty for plaintiffs who sue to enforce a right the Legislature has chosen to favor in no sense implies it intends to offer this same bounty to defendants who show they have not violated the right. Indeed the more logical explanation is that the Legislature desires to encourage injured parties to seek redress—and thus simultaneously enforce public policy—in situations where they otherwise would not find it economical to sue." (*Covenant Mutual, supra*, 179 Cal.App.3d at pp. 324-325; fns. omitted.)

Moreover, the argument by amicus curiae that the attorney fees provision found in the PMPA (15 U.S.C. § 2805(d)) is a one-way provision and does not create any reciprocal right of which a petroleum marketer defendant can take advantage, also supports our reasoning to some extent, as showing there is a companion public policy stated in this professional field to allow those challenges to petroleum marketers' practices in dealing with their franchisees that are based on statute, to be litigated without the plaintiffs incurring enormous exposure to contractual attorney fees. The statutory protections of the Cartwright Act also require as much.

In conclusion, Dealers are correct that the Cartwright Act defense falls outside the scope of the lease attorney fees clause here.

2.   *"Substantially Prevailing Party" on "Some Aspects of Such Action."*

In this argument, Dealers focus upon the specific language of the attorney fees clause, that permits the trial court, as required by equitable considerations, to make a determination that a party substantially prevailing on some aspects of the action, but not others, should be awarded costs or attorney fees as apportioned. They contend that since they prevailed at trial

on the misrepresentation claims, at least until reversal was ordered on appeal, the trial court should have taken that into account as an equitable consideration and apportioned the costs and fees award accordingly. Similarly, Dealers contend that since they succeeded in the pretrial stage in having Chevron's summary adjudication motions denied, they should also be considered to have substantially prevailed in some aspects of the action in this regard. They also appear to generally contend that there is no basis for any contractual attorney fees award for the tort causes of action.

The latter argument is clearly contrary to the authority of *Santisas v. Goodin, supra,* 17 Cal.4th 599, 608, that depending on the language of the applicable contractual attorney fees clause, it may support an award of attorney fees to a prevailing party whether the litigation was based on tort or contract, if it arose out of a relationship originally created by contract. More importantly, Dealers cannot show that the trial court erred or abused its discretion in determining that they had not prevailed on any aspects of this litigation, in light of the favorable judgment that Chevron obtained after appeal. Even in light of the specific language of the attorney fees clause, allowing for an equitable determination that a party may have substantially prevailed in some but not other aspects of the case, Dealers cannot show that there was any failure by the trial court to address or to decide correctly all the issues presented here. There was no error on the part of the trial court in interpreting that provision.

## 3.  *Individual Defendants: Apportionment*

We first point out that the record does not show that Dealers conducted any discovery in the fees and costs proceedings on the separateness of the defense efforts as to the Corporation or its management employees who were named as individual defendants. Nor does the record show that Dealers raised this argument to the trial court. Accordingly, we would be justified in declining to address it, as a factual issue not appropriately addressed on appeal due to the lack of a factual record. (*Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847 [60 Cal.Rptr.2d 780].)

Even if we do consider the record adequate on this point and the matter to be a question of law that we may consider de novo, (see fn. 8, *post*), we would find the record inadequate to support Dealers' claims in this respect. Our analysis must begin with the attorney fees clause here, referring to any lawsuit/arbitration between Chevron and a Dealer "arising out of or relating to the transactions or relationship contemplated by this Lease (regardless whether such action alleges breach of contract, tort, violation of a statute or any other cause of action)," and giving rise to a right to recover costs on the

part of the substantially prevailing party, including its reasonable attorney fees. The claims against these individual defendants clearly grew out of the transactions or relationship contemplated by the lease, and the attorney fees clause is broad enough to cover such allegations. It is not dispositive that the individual defendants were not signatories to the lease, since the Corporation carried out the defense of its employees for their acts in their official capacities. The employees did not necessarily incur attorney fees on their own behalf, for which they were personally liable, but it is not disputed that a defense had to be provided and the Corporation incurred such expenses.

Moreover, both the Corporation and the individual defendants were charged with various forms of fraud and suppression of fact, as well as negligence. The contract and breach of covenant claims were restricted to the Corporation, Chevron. The remaining causes of action pertained to statutory claims or equitable remedies. The gist of the allegations about the individual defendants was that they were acting within the course and scope of their employment in making the alleged misrepresentations. As stated in the attorney declaration in support of the motion for attorney fees, if the individual defendants had not been named as parties, they would nevertheless have been material witnesses, since they were the ones who dealt directly with the individual dealers on the lease problems. Accordingly, the trial court had an adequate factual basis on which to conclude that the investigation and defense of the Corporation and of the individual defendants were closely related and involved the same issues. There was no reversible error in this regard.

### 4.  *Voluntary Dismissal Before Trial (Civ. Code, § 1717, subd. (b)(2))*

Where a plaintiff voluntarily dismisses an action with prejudice, the defendant is ordinarily one in whose favor a dismissal has been entered, who therefore qualifies as a "prevailing party" within the meaning of Code of Civil Procedure section 1032, subdivision (b), and who is "entitled as a matter of right to recover costs" unless another statute expressly provides otherwise. (*Santisas v. Goodin, supra,* 17 Cal.4th at p. 606.) ▇▇▇ Here, Dealers only dismissed the 17th cause of action voluntarily before trial, and now claim on appeal that an apportionment for the defense of that particular claim must be made and deducted from the fees award.[8]

▇▇▇  In *Santisas v. Goodin, supra,* 17 Cal.4th 599, the Supreme Court framed the issue as whether, in an action asserting both tort and contract

---

[8]Chevron argues that this court should not reach this issue, because it was not raised in the trial court. (*Planned Protective Services Inc. v. Gorton* (1988) 200 Cal.App.3d 1, 13 [245 Cal.Rptr. 790].) However, questions of law on an undisputed record can ordinarily be addressed if necessary on appeal, and we take that approach here. (*Yeap v. Leake* (1997) 60 Cal.App.4th 591, 599, fn. 6 [70 Cal.Rptr.2d 680].)

claims (all arising from a contract containing a broadly worded attorney fee provision), and where the plaintiff has voluntarily dismissed that action before trial, the defendant should be able to recover any of the attorney fees incurred in defending the action. The court concluded that in such voluntary pretrial dismissal cases, although Civil Code section 1717, subdivision (b)(2) will bar recovery of attorney fees incurred in defending the contract claims, there is no bar to recovery of attorney fees incurred in defending the related tort or other noncontract claims. "Whether attorney fees incurred in defending tort or other noncontract claims are recoverable after a pretrial dismissal depends upon the terms of the contractual attorney fee provision." (*Santisas v. Goodin, supra,* 17 Cal.4th at p. 602.) However, the court declined to resolve the issue of the appropriate allocation of recoverable attorney fees that were incurred to litigate common issues between the contract and tort claims. (*Id.* at p. 623, fn. 10.)

As applied here, this analysis indicates that we must look to the contractual attorney fee provision terms. They provide that in any action "arising out of or relating to the transactions or relationship contemplated by this Lease (regardless whether such action alleges breach of contract, tort, violation of a statute or any other cause of action)," the substantially prevailing party shall be entitled to recover reasonable costs of suit, including reasonable attorney fees. This is broad in its terms, suggesting Chevron could have been allowed its fees with respect to the substantive nature of the dismissed cause of action, negligence. The question is whether, in failing to make such an allocation, the trial court abused its discretion or misinterpreted the applicable statute. (Civ. Code, § 1717, subd. (b)(2) ["Where an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section."].)

We see no such abuse of discretion or erroneous statutory interpretation here. Although it would have been the better practice for the trial court to deal more specifically with the provisions of Civil Code section 1717, subdivision (b)(2), to state whether there was any prevailing party for purposes of the section, it was at most harmless error to fail to do so. In the first place, it was not an entire action that was voluntarily dismissed, but only one cause of action among many. Thus, the statute by its terms does not appear to apply. Second, the defense of the negligence cause of action could reasonably have been found to have been inextricably intertwined with the defense of the negligent misrepresentation cause of action that went to trial. Dealers acknowledged this relationship between the different causes of action below. Third, both the corporate and the individual defendants were charged in this negligence cause of action, but there were other similar causes of action alleged against them, and the trial court could have reasonably found the defenses overlapped to some extent. Accordingly, Dealers are

not clearly as a matter of law entitled to a declaration that Chevron was not the prevailing party for purposes of the voluntarily dismissed cause of action for negligence.

## II

### *Code of Civil Procedure Section 998 Award*

■ In reviewing an award of costs and fees under Code of Civil Procedure section 998, the appellate court will examine the circumstances of the case to determine if the trial court abused its discretion in evaluating the reasonableness of the offer or its refusal. (*Pineda v. Los Angeles Turf Club, Inc.* (1980) 112 Cal.App.3d 53, 63 [169 Cal.Rptr. 66] (*Pineda*); *Jones v. Dumrichob, supra,* 63 Cal.App.4th at p. 1262 (*Jones*).) The purpose of Code of Civil Procedure section 998 is to encourage the settlement of litigation without trial. (*Pineda, supra,* 112 Cal.App.3d at p. 63.) " 'Its effect is to punish the plaintiff who fails to accept a reasonable offer from a defendant.' " (*Ibid.*) To implement these principles, the following rule has been developed: "Where, as here, the offeror obtains a judgment more favorable than its offer, the judgment constitutes prima facie evidence showing the offer was reasonable and the offeror is eligible for costs as specified in section 998. The burden is therefore properly on plaintiff, as offeree, to prove otherwise." (*Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 700 [241 Cal.Rptr. 108] (*Elrod*).)

■ In ruling on Chevron's request for expert witness fees and costs under Code of Civil Procedure section 998, the trial court found that Chevron had prevailed on every cause of action. As of the time of the offer, which was to pay $100 to each Dealer, along with the waiver of any attorney fees and costs claims, Chevron had already incurred $308,064.08 in costs and fees of $1,113,810.40. The trial court concluded this was not merely a nominal offer (citing *Jones, supra,* 63 Cal.App.4th 1258). However, the trial court, in its discretion, reduced the recoverable expert witness fees from the requested amount ($2,382,596.77), to $1,966,586.

Dealers contend here that the trial court failed to make an appropriate exercise of discretion in awarding expert witness fees, by not applying the proper analysis to determine whether Chevron's offer was made in good faith. They argue there was no appropriate evaluation made of the circumstances at the time the offer was made, from the perspective of the defendants. (*Elrod, supra,* 195 Cal.App.3d at pp. 698-699.) Dealers point to the fact that the offer was made approximately one and one-half years before trial, while discovery was still ongoing and the issues were still being developed.

Before trial, Chevron was denied the summary adjudication it sought as to 13 out of the 18 causes of action. Of the eight causes of action that went to trial, Dealers prevailed on three of them. Chevron had a large exposure to damages, potentially multimillion-dollar damages, and Dealers contend the $100 offer could not reasonably have been found to be a good faith one. In any event, Dealers contend that since the three individual defendants did not make any settlement offers on their own behalf, no expert fees expended to defend them should have been awarded to Chevron.

In *Murillo*, in addition to costs of suit, the prevailing party sellers also received an award of their expert witness fees under Code of Civil Procedure section 998, because the buyer had recovered less than the sellers offered in their Code of Civil Procedure section 998 settlement offer. (*Murillo, supra,* 17 Cal.4th at pp. 999-1000.) The Supreme Court applied the same approach as it did to the Song-Beverly arguments: "Having concluded Civil Code section 1794(d) fails to set forth an express exception to the general cost-recovery rule set forth in section 1032(b), we likewise conclude it provides no exception to the provisions of section 998. Section 998 explicitly states that it 'augment[s]' section 1032(b). Thus, the requirements for recovery of costs and fees under section 998 must be read in conjunction with section 1032(b), including the requirement that section 998 costs and fees are available to the prevailing party '[e]xcept as otherwise expressly provided by statute.' (§ 1032(b).) Because the cost-shifting provisions of the Song-Beverly Act do not 'expressly' disable a prevailing defendant from recovering section 998 costs and fees in general, or expert witness fees in particular, we find nothing in the Act prohibiting the trial court's exercise of discretion to award expert witness fees to seller under the circumstances of this case." (*Murillo, supra,* 17 Cal.4th at p. 1000, fn. & italics omitted.)

Here, this authority indicates that there is no difficulty in reading the requirements for recovery of costs and fees under Code of Civil Procedure section 998 in conjunction with Code of Civil Procedure section 1032, subdivision (b). Nor does the Cartwright Act attorney fees provision affect this analysis, by somehow disabling a prevailing defendant from recovering costs and fees in general, or Code of Civil Procedure section 998 expert witness fees in particular. To repeat it here, Business and Professions Code section 16750 provides: "Any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, may sue therefor in any court having jurisdiction in the county where the defendant resides or is found . . . without respect to the amount in controversy, and to recover three times the damages sustained by him or her, interest on his or her actual damages pursuant to Section 16761, and preliminary or permanent injunctive relief . . . , and shall be awarded a

reasonable attorneys' fee together with the costs of the suit." While there are public policy restrictions on applying a reciprocal right to an attorney fees contractual provision in this statutory context of the Cartwright Act, as discussed above, this section does not affect an otherwise valid Code of Civil Procedure section 998 entitlement, and Dealers do not directly argue that it does. Instead, they merely argue an abuse of discretion in light of all the circumstances.

The trial court relied on *Jones, supra,* 63 Cal.App.4th 1258, in making its analysis. In *Jones,* a plaintiff who refused a Code of Civil Procedure section 998 offer contended that the trial court abused its discretion in awarding the prevailing defendant discretionary costs. The plaintiff claimed the Code of Civil Procedure section 998 offer to compromise, of a waiver of costs only, "was not a reasonable offer, but rather a token, tactical one made only to preserve the right to later claim these disputed costs." (*Jones, supra,* 63 Cal.App.4th at p. 1262.) However, the Court of Appeal rejected this argument, finding that the plaintiff did not show any factual basis to claim the offer was " 'unrealistic and unreasonable' " or made solely in order to " 'gain a strategic advantage.' " (*Jones, supra,* 63 Cal.App.4th at p. 1263.) Instead, the offer of a waiver of costs was deemed to have a significant monetary value: "Appellants overlook the fact that in offering to have judgment entered against him, respondent [defendant] was also waiving his considerable cost bill against which appellants' likelihood of success in the case must have been weighed." (*Jones, supra,* 63 Cal.App.4th at p. 1263.) This conditional offer supported the award of costs.

In this case, the conditional offer of $100 and a waiver of costs and attorney fees could reasonably have been deemed by the trial court to be reasonable and in good faith, in light of the circumstances at the time the offer was made, as evaluated from the perspective of the defendants. (*Elrod, supra,* 195 Cal.App.3d at pp. 698-699.) Hindsight now shows the value of the proposed waiver of costs and fees was considerable, and it was no secret at any time that Chevron hired expensive lawyers who were expected to pursue all available avenues of defense. That they might eventually be successful was reasonably foreseeable as of the time the offer was made. We cannot say the trial court erred or abused its discretion in concluding this was not merely a nominal offer. Also, the trial court, in its discretion, reduced the recoverable expert witness fees from the requested amount ($2,382,596.77), to $1,966,586. The fact that the expert fees included the Cartwright Act defense does not make any difference in light of *Murillo, supra,* 17 Cal.4th at page 1000. In any case, the reduction made by the trial court shows an additional effort to achieve an equitable result in light of the policies of Code of Civil Procedure section 998.

Finally, it is not dispositive that the three individual defendants did not make any settlement offers on their own behalf. As already discussed in part I.D., *ante*, the only allegations about the individual defendants were that they were acting within the course and scope of their employment in making the alleged misrepresentations. As stated in Chevron's attorney declaration in support of the motion for attorney fees and costs, if the individual defendants had not been named as parties, they would nevertheless have been material witnesses, since they were the ones who dealt directly with the individual dealers on the lease problems. Accordingly, the trial court had an adequate factual basis on which to conclude that the defenses rendered to the Corporation and the individual defendants were well integrated and involved the same issues, for purposes of expert fees as well as attorney fees. There was no reversible error in this respect.

## DISPOSITION

The postjudgment order is reversed with directions to the trial court to make appropriate findings and apportionment of attorney fees to delete only that part of the attorney fees award that represents the defense of the Cartwright Act claims. The balance of the order is affirmed. Each party is to bear its own costs on this appeal.

Haller, J., and McConnell, J., concurred.

A petition for a rehearing was denied April 23, 2002, and the opinion was modified to read as printed above.